BRALY v. CONNALLY et al. (No. 1505.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 11, 1915. Rehearing Denied Nov. 25, 1915.)

1. USURY ⟐⟐⟐140 — RECOVERY OF PENALTY — PARTIES.

B., as shown by his contract with the maker of a note, and their practical construction thereof, not having paid it as agent of the maker, but acquired it as absolute owner by purchase for himself, the maker could not recover of the payee the penalty for usury paid, which under Rev. St. 1911, art. 4982, can be recovered only by the persons paying it, or their legal representatives.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 426; Dec. Dig. ⟐⟐⟐140.]

2. USURY ⟐⟐⟐142 — RECOVERY OF PENALTY — PARTY PAYING USURY—EVIDENCE.

Agreement of the maker of notes made with B. after B. acquired them from the payees, promising to pay to B. such notes, is admissible in an action by the maker against the payees for penalty for usury, as showing the understanding between the maker and B., as to whether B. acquired them as agent for the maker or for himself individually.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 428–433; Dec. Dig. ⟐⟐⟐142.]

Appeal from District Court, Smith County; W. R. Heath, Judge.

Action by W. T. Braly against Walter Connally and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Appellant brought the suit to recover double usurious interest alleged to have been paid by him to appellees. The trial was before the court without a jury, and judgment was rendered in favor of appellees.

The facts found by the trial court are supported by the evidence and are here adopted:

"That W. T. Braly on February 3, 1911, executed and delivered to Elwood E. Carlton and Walter Connally his two certain promissory notes for the sum of $2,639.90 each, due one and two years from date, respectively, bearing 10 per cent. interest per annum from date, the interest payable semiannually, and in case any installment of accrued interest was not paid when due, the accrued interest should become as principal and draw interest at the rate of 10 per cent. per annum; also for 10 per cent. of the amount of the accrued interest and principal to be added in case of suit, or if placed in the hands of attorney for collection, and that failure to pay the first note should mature both notes.

"That to secure the payment of said notes, W. T. Braly executed deed of trust on certain lands in Smith county, Tex.

"That the notes were executed for a loan by Carlton and Connally to Braly of $4,479.77, and said amount was the real consideration for which the notes were executed.

"That in the fall of 1912, the first of the notes having matured, Carlton and Connally sued on same in the district court of Smith county, Tex., and prayed for a foreclosure of the deed of trust lien on the land to secure the payment of same.

"That on January 9, 1913, while said suit was pending, J. A. Bulloch bought said notes and paid to Carlton and Connally $7,075.89, the amount of said notes, principal, interest, and attorney's fees, and on said day Carlton and Connally transferred said notes to said Bulloch by indorsement without recourse.

"That of the amount paid by Bulloch to Carlton and Connally there was $1,914.55 usury.

(But Mr. Bulloch had no knowledge or notice of any usury in the amount.)

"That in the transaction by which J. A. Bulloch purchased the notes from Carlton and Connally, he was acting for himself and not as the agent of W. T. Braly.

"That some time after the purchase of the notes by Bulloch from Carlton and Connally, Braly deeded to him (Bulloch) the land which was given to secure the payment of said notes, and J. A. Bulloch thereafter sold the said land.

"That from the proceeds of the sale of the land J. A. Bulloch retained the amount he had paid Carlton and Connally, together with expenses in making the sale of the land, and gave to Braly one-half of the remainder.

"That Carlton and Connally understood they were selling, and in fact sold, the notes to Bulloch individually and not as the agent of Braly, and Bulloch took an assignment of the notes and lien to secure same from said Carlton and Connally in order that he might be subrogated to the rights of Carlton and Connally for his protection against certain judgments held against Braly by other parties, which judgments had been abstracted in Smith county and under which execution had been issued and levied on the said land.

"That Braly never paid to Carlton and Connally anything on the notes held by them and transferred to Bulloch, but the payment made by Braly was made to Bulloch in satisfaction of the debt he (Braly) owed to Bulloch and not to Carlton and Connally.

"That after the sale and transfer of the notes by Carlton and Connally to J. A. Bulloch, Carlton died, leaving a will, which has been duly probated, wherein Sid Carlton and R. Bergfeld were made his independent executors, without bond, and his said estate is being administered by them, independent of the probate court.

"I find that any payment or satisfaction of the notes in question was made by Braly to Bulloch, the owner and holder of the notes, and not to Carlton and Connally, and that said Braly is not entitled to recover from Carlton and Connally any usurious penalty."

Nat. W. Brooks, of Tyler, for appellant. Simpson, Lasseter & Gentry and Marsh & McIlwaine, all of Tyler, for appellees.

LEVY, J. (after stating the facts as above). [1] The propositions of appellant under assignments of error from 1 to 4 inclusively are to the point that the legal effect attaching to the contract between appellant and J. A. Bullock, in accordance with which J. A. Bullock purchased the notes from appellees, is that of making a payment of the usurious interest by J. A. Bulloch a payment in behalf of and by appellant and with funds furnished by appellant, and that the court erred in not giving it such legal effect and awarding him a judgment for the penalty sued for. The evidence shows that appellant was desirous of staying the rendition of any judgment in the pending foreclosure suit of appellees, and lacking the money to pay the notes, on January 9, 1913, orally agreed with J. A. Bulloch as follows: J. A. Bulloch was to furnish money to the amount of the notes sued on, including interest then due, court costs and the attorney's fees provided in the notes, and to pay it to appellees for the purpose of acquiring the possession and ownership of the notes, and then to handle the land in suit in his own name, clear

up and perfect existing deficiencies in the legal title to the land, and to pay the costs of so doing; to find a purchaser for same, and sell it, and out of the proceeds of the sale to deduct in his favor and use all the money expended in clearing up the title and in making sale and the amount of the notes and the costs paid on the suit, and then to divide the net balance between himself and appellant. Appellant at the time executed to Mr. Bulloch a power of attorney giving him possession, control, and disposition of the land. It is clear that both parties have bound themselves by reciprocal obligations. Mr. Bulloch is bound by the terms of the agreement to acquire the notes from appellees with his own independent funds, and to himself thereafter handle the mortgaged land and sell it. The appellant is bound by the agreement to pay Mr. Bulloch the money so furnished to acquire the notes from and out of the proceeds of the sale of the land when it was sold, and compensation to the amount of one-half of the net balance. The agreement, though, is not by intention of the parties an absolute or conditional sale of the land by appellant to Mr. Bulloch with which to pay off the notes held by appellees. And it appears to be the purpose and intention of the parties, from the terms of the agreement, that Mr. Bulloch, in acquiring the notes from appellees with his own funds, should pursue the course or method of taking over and holding in ownership to the exclusion of all others, the notes so acquired until such time as they might be paid and liquidated by the proceeds arising from the sale of the land. And if in this respect the real meaning and intention of the parties is obscure, a resort to the understanding of the parties as to the method or mode that Mr. Bulloch should pursue in acquiring the notes, and their acts of practical construction placed upon the agreement, as appears in the record, relieves it from doubt. Looking to the record it appears that on January 9, 1913, Mr. Bulloch, out of his own money, paid to appellees the amount of the notes, principal, interest, and attorney's fees, and the appellees transferred said notes to J. A. Bulloch "without recourse." Mr. Bulloch testifies: "Mr. Carlton (appellee) had agreed to sell the notes to me beforehand," and "I had an agreement with him (appellee) beforehand that I was to take up the notes if it became necessary." After Mr. Bulloch furnished and paid the amount of the notes to appellees, and on January 20, 1913, the appellant executed to Mr. Bulloch a written instrument which describes the two notes given to appellees and their being secured by a deed of trust on certain land and the foreclosure suit of appellee thereon, and then continues as follows:

"And while said suit was pending, to wit, on January 9, 1913, the said Carlton and Connally transferred said notes to J. A. Bulloch, and at the time of the transfer there was due on said notes $7,075, which amount is just, due, and unpaid; and I hereby agree to pay said amount with 10 per cent. interest thereon from the date, to wit, January 9, 1913, and 10 per cent. additional on said amount if the same is not paid at maturity and is placed in the hands of attorneys for collection or suit is brought on same. The date when said indebtedness is to become due is the 20th day of January, 1913."

It appears that on January 29, 1913, the appellant executed a deed to this land and other tracts of land to Mr. Bulloch. And it appears that on November 21, 1913, appellees transferred in writing their mortgage lien on the land to Mr. Bulloch. Mr. Bulloch thereafter found a purchaser and sold the land, retained the amount of the notes together with the expenses in making the sale of the land, and gave to appellant one-half of the remainder. Thus it appears that Mr. Bulloch had pursued the course of purchasing the notes and having them transferred to him, and that appellant, knowing appellee had "transferred such notes to J. A. Bulloch," admitted the amount of the notes to be a just debt and agreed and promised to pay the same to J. A. Bulloch. The agreement therefore must be construed as manifesting the purpose and intention of the parties that Mr. Bulloch in his own behalf was to purchase the notes from appellees and to carry the same until paid to him by appellant through the proceeds of the sale of the land. And in such agreement of the parties the purchase of the notes by Mr. Bulloch and his holding same as absolute owner thereof would have the legal effect of making appellant liable thereon to Mr. Bulloch until liquidated and paid to Mr. Bulloch. And finding as a fact, as the court did, that Bulloch bought the notes, and for himself individually, it could not be properly said that such course and method of dealing with the notes was not contemplated and intended by the parties. The effect of the agreement and the facts found by the court, which have evidence to support them, would deny appellant a recovery, as concluded by the court. Under the statute, only "the person or persons paying same, or their legal representatives," may maintain an action to recover of the payee the penalty for usury paid. Article 4982, R. S. And, as ruled in Bank v. Lasater, 196 U. S. 115, 25 Sup. Ct. 206, 49 L. Ed. 408, "the payment contemplated by the statute is an actual payment, and not a further promise to pay."

[2] By the sixth assignment of error appellant insists that the document of January 20, 1913, executed by appellant to J. A. Bulloch and agreeing and promising to pay to Bulloch the notes acquired from appellee, was inadmissible because not material to any issue. It is believed that the instrument was admissible as showing the understanding of the parties in respect to the method and course contemplated by the parties to be pursued by Mr. Bulloch in acquiring the notes from appellees.

By the ninth assignment of error it is insisted that the court erred in refusing and failing to find the facts requested. It is believed that the court's findings were sufficient and substantially as requested by appellant.

It is concluded that there is no error in the ruling of the court respecting the evidence complained of in the fifth, seventh, and eighth assignments of error.

The judgment is affirmed.